5. Appeal No. 24-1858 Andrea Ratfield v. United States Drug Testing Laboratories, Inc. Mr. Roberts. Good afternoon. May it please the court. Terry Roberts for all appellant plaintiffs. There was one main, aside from the footnote regarding causation, the main issue in this appeal is that the district judge entirely dismissed a complaint that is largely based around RICO, although there's state law claims as well. There were three named defendants and there were three causes of action. Those are 18 U.S.C., 1962, sub A, B, and C. Judge Gettleman notes in his order that's on appeal that A, B, and C claims are all alleged and we've got three defendants. The motion to dismiss that was filed by the defendants, attacked the one aspect of the 1962 C claim, but not the A or B claims. And the way in which they attacked it, the distinction between the person and the enterprise is a legal theory that only pertains to 1962 claims. And so- Was that something that you pointed out in the district court saying, well, we'll have an argument about 1962 C, but the argument about C doesn't apply to A and B? Well, my answer for that, your honor, and I understand that you're talking about the notion in the answer brief that this wasn't somehow preserved, is that we answered the motion to dismiss that was filed, which only really raised 1962 C claims. Right, but then when the district court issued its opinion, did you say, well, that's all right, it's not the outcome we hoped for on C, but what about A and B? We should be going forward here. Right, the Rule 59 and 60 motion that was filed after said, whoa, hey, you know, there's three defendants, there's three causes of action, at most you should be knocking out one defendant and their 1962 C, but Jones and Lewis, they should still be in this as natural persons and also the A and B claims, 1962 A and B claims, should survive against USDTL because there is no rule that the enterprise in person has to be distinct under A and B. You've granted too much here. We were answering the 1962 claims against USDTL. If they win those, and of course we're appealing, we disagree with the fact that they should win those, that's the only thing that should be dismissed is the 1962 C claim against USDTL only. Doesn't the argument about causation go to both subsection A and the B as well? Because under those, you still have to prove causation, right? And that certainly seems like a point that was raised by defendants and responded to by the plaintiffs. Yes, yes, your honor. I agree with the distinction between the person enterprise and 1962. Obviously, you always have to prove causation in every case, but I think that the judges, the district judges opinion on causation, which was just discussed in a footnote, not even really in the body of the opinion, was clearly wrong. If it was wrong, explain what is your theory of proximate causation in this case? Not but for, what is your theory of proximate causation? The Supreme Court and Ray versus Spirit Airlines, which is one of the authorities that Judge Gettleman relied on, seemed to say there's some sort of first-party requirement. And their thought on causation goes like this. Your clients, the plaintiffs, these dry blood tests are supposed to detect alcohol use or alcohol abuse because these people are all on something, for lack of a better word, like a probation, where their alcohol intakes being monitored by testing. So they're saying that they know they didn't drink alcohol and when the scientific tests come back and we say we have used science and we have determined that you have had alcohol to drink within the last period of time, whatever period of time that the test is supposed to cover, that the plaintiffs never believed it because they knew they had nothing to drink. So they didn't rely on the fraud. That's Judge Gettleman's view of causation. But ours is the obvious false statement and the reliance here is when USDTL tells the, I'll say just the employers, but some of these are licensing bodies, but the decision-makers about who gets fired or gets their license suspended or revoked, their professional licenses, when they are told by USDTL, we've used science. This person you're monitoring has used alcohol within the past period of time. They've violated the program. That's, they have relied on it. That's a fraudulent marketing claim. Not marketing because that's the marketing material. The actual test result is a statement. This person drank. This person drank alcohol. Yeah, but you say, what, maybe I have the same confusion as Judge Kirk. The essence of the complaint is that it's a shoddy, it's a really, really shoddy test and they knew it. It's not reliable. It yields false positives. Yes. Okay, but the way that you present that is in the complaint is all through a focus on how it was marketed, okay, and to the extent that there's references to concerns about false positives with respect to the people. Well, Your Honor, I... Are you sure a false positive is a misrepresentation? Absolutely. It's a way of saying, this person had a drink. That's, they're reporting that to the, that's the only statement that matters. I guess, maybe to put a gloss on that, does the test accurately reflect the results of what it was supposed to measure? Not what it's supposed to represent, but does the test results accurately reflect what the actual results of the test were as to what they found in the test? I'm sorry, I might not understand your question. Are you asking if the test is accurate? It's the same question. So, in other words, let's just make up somebody. Jane Doe. Sure. She was given a test and the test results, when you look at them, are you tested negative and then somebody came along and crossed out negative or manipulated negative and wrote positive. No, no, that's not our claim here. Our claim is that the false science is the statement, these tests are only useful as statements of saying this person has not had a drink or this person has had a drink. It's kind of a claim about, these aren't, they're not anywhere near as reliable to predict alcohol, this has to be an alcohol base, alcohol, past alcohol use. They're nowhere near as reliable as they were marketed. They were marketed to be very reliable. Correct, but when they send a specific test result about a specific person on a specific date, that is a false statement to the employers or the licensing bodies that this person had, this particular person had a drink at this particular time. It's only a false statement if you, in the context of the other, in the context of the other statements before, right? So, let's say, let's say the test is supposed to measure your vitamin C levels, okay? And the company said, you know, if you have vitamin C levels in excess of A, that means that you've had alcohol. The test comes back and it has, you know, your vitamin C levels, right? Your claim is not that the vitamin C level was incorrect or somehow misrepresented, but that the impact of that, what that's supposed to represent was misrepresented by the company, right? Well, no, our claim is that there was no alcohol in the system and that these tests are unreliable in the fact-gathering, if I understand your point correctly. Not that there's some threshold that can be moved up or down, but that they falsely report. See, the test showed, the blood drop test, in fact, showed positive and what you're saying is that can't be relied upon. It is not a reliable test of a positive indication of recent past alcohol use. Right, and for the purposes of being up here. But you're not debating that, however you read the test, that the result of the test was positive. Correct. That there weren't in the back room. Right, that that's a lie. That it's equivalent to someone just calling them up and saying, I saw so-and-so at a bar last night and they, I watched him drink a Cosmopolitan. That that's in effect, this is a statement in the form of a test that is a false statement and those are recited all throughout the complaint how each test, as it was communicated in regard to all 14 plaintiffs, directly led to either their license suspended or revoked or the loss of their job, which is proximate causation. Mr. Roberts, you say in your in your reply brief that the complaint, in the complaint, you allege that the company, USDTL, was itself an enterprise. Right, I looked through your complaint and I could never, I did not find a statement that actually alleges that USDTL was in itself an enterprise. What is your best argument that the complaint alleges that USDTL was the enterprise? That USDTL was the enterprise? Well, there's two parts to this question, Your Honor. I welcome the question because I think that's much, the central issue going on in this appeal. When when Judge Gettleman says something that we disagree with, which is that USDTL is not sufficiently distinct from the enterprise, that there's not this ephemeral web out there with Lewis, Jones, and USDTL, but that USDTL is indistinct. That has to be a legal rule. If I am not distinct from you, then we are the same person. You're saying that we're bound by Judge Gettleman's determination that, to the extent he made it, that USDTL was an enterprise? I'm saying there's two parts to this question. The first, the first is that complaints have to assert facts, not legal theories. That's well settled. So if our facts shake out differently, where it's displeasing to us, but if courts determine that USDTL is the enterprise through which this is happening, not a with an enterprise, even though corporations can both be an enterprise and be a person, and actually they also have to be, every person has to be employed by or associate with the enterprise just to state a claim. So these are very difficult Venn diagrams to draw because you have to be like family and then you also can't be the same thing or else you're not associating with. But if the courts are threading the claim and saying, look guys, plaintiffs, USDTL is not sufficiently dissimilar from the enterprise here. It has to be the enterprise itself. It's a binary switch. This is the company that sells the tests. No one's disputing that. So it's either engaging in the enterprise as a person under the legal fiction that a corporation is a person or it is the enterprise. It can't be anything else and Judge Gettleman refused to see the fact that if it's not one, it has to be the other. If you're indistinct from the enterprise, you are the enterprise. And so therefore the claims against Lewis and Jones as people who are using USDTL to commit RICO acts, those claims against them must survive. But also the 1962 A and B claims should survive because distinctness isn't a problem with those. Okay, I see that my time is up and I'm not sure if that was my rebuttal. We'll give you a minute of rebuttal time. Let's hear from Mr. Litchfield. Thank you, Your Honors. Good afternoon and may it please the court. From the very first time a motion to dismiss was filed in this case down in Florida in 2023, the plaintiffs have had ample opportunity to address the deficiencies in their complaints. They failed to do so. We're up here on a 12b6 motion and the complaint governs. The law is clear that in order to pursue a civil RICO claim under 1962 C, the plaintiffs must identify a person that is distinct from the RICO enterprise and that person must conduct or participate in the enterprise's affairs as opposed to their own. Plaintiffs failed to meet that fleeting threshold here. The plaintiff's complaint has been constant the entire time that USDTL and Mr. Jones and Mr. Lewis combined, the three of them were persons conducting the enterprise and case law in the Seventh Circuit is clear that that doesn't work. All the cases cited by the plaintiffs relate to individuals who are separately persons and then have a corporation be the enterprise separately and as Judge Lee pointed out, that's not pleaded. That is never pleaded. Plaintiffs have had the opportunity to plead that but they chose not to do so. And again, they had opportunities to amend the complaint and they made this strategic decision not to do so. Then for the first time in the motion to reconsider, that is when this theory arises about USDTL being the enterprise and Lewis and Jones separately being the persons that make it up. And again, that's too late. Judge Gettleman made his ruling. Plaintiffs had opportunities to argue. They made their arguments and now there's an order and and we can't amend the pleadings after the fact here. We cite to numerous paragraphs in the plaintiff's complaint where they specifically allege that each defendant is a person constituting this enterprise. And again, paragraph 161, each defendant is a person. Paragraph 162, each defendant participated in the enterprise. The enterprise is something else. There were a number of allegations attempting to create an enterprise with a third party, CLS and Gable. Those appear to have been abandoned on appeal. It's interesting. That's the way they plead it, right? I mean, I read it the same. They plead it as it's USDTL, it's Lewis and who is it, Jones? Yes. And then it's Lisa and Robert Gable and their organization called CLS. Correct. They all combined to be the enterprise. That was, in theory, that was our reading of the complaint. So the first amended complaint in Florida. That's the way they wrote it. Absolutely. The first amended complaint in Florida did not have the Gable-CLS theory. And then defendants and counsel in Florida filed their motion to dismiss, making the same arguments that we're making now about the distinctness requirement of an enterprise. And then the second amended complaint gets filed with this whole Gable-CLS theory. We file again our motion to dismiss addressing why the CLS-Gable approach did not work and then on appeal that that got abandoned. So we're back to where we were after the order on the first amended complaint and that's a docket number 45 on the record. What do you have to say about the AB point? The AB point. So the AB point, and again the court's review for this is de novo, it could be affirmed for any reason. So certainly, yes, plaintiffs had ample opportunity to raise this in any of the briefings on any of the motions to dismiss and it was not. And I do not believe it was raised on the motion to reconsider. The motion to reconsider addressed, brought again for this theory that USDTL is the enterprise and Jones and Lewis are the persons. This new theory about A and B was new to the appeal, is my understanding. And again, there we have causation arguments. Again, and again, there was a lot of discussion earlier about reliance. And causation, if the court buys defendants arguments on causation, that addresses A, B, and C. And it's important, again we've got a heightened pleading requirement in 9b here, and so they have to argue very specifically reliance on fraud. And again, this is a gigantic complaint, I think it's 93 pages, so there's a lot in there. But parsing through that, it is very hard to find who specifically relied on what and when. It's not there. If you look in the complaint, there's an allegation that quote-unquote collection sites, partners, clients, agencies, governments, employers, courts, and people relied on them. And that's, I contend, is about as broad as you can get, and definitely doesn't meet our 9b requirement about specificity. So again, so the plaintiffs put this universe of YouTube videos and statements that the defendants have made at some point in the past, and they outline all the harms that the plaintiffs have suffered, but they do not connect those. And there's been ample opportunity to connect those dots, and it hasn't been done, because frankly it can't be done. Because there's no allegation that anyone who made a decision as to the plaintiff's fate ultimately even saw what Lewis and Jones are saying on YouTube. There's no allegation that they watch YouTube. So it's, those don't matter for the purposes of this. So it's a false positive, a misrepresentation within the meaning of the wire and mail fraud statutes? And I don't believe so. And when you were asking counsel about this, it did bring up an interesting point. Because a lot of the allegations relate to the plaintiff's use of hand sanitizer, or things like that. What is mailed out is the results of the test, and the results of the test are, hey this is positive, positive for alcohol. And if the plaintiffs are contending and alleging in their complaint that hand sanitizer, for example, will create a false positive, the statements about testing positive relate to, we did find alcohol, and the alcohol was either caused, the test doesn't say they imbibed a cosmopolitan on Tuesday, March 22nd. It's saying this test tested positive. And the plaintiff's allegations run through saying that these different things can cause false positives. So the test comes in, USDTL processes the test and sends out the result based on their scientific principles. If they're taking issue with what those principles are, it doesn't change the fact that what is being sent out is not necessarily mail fraud, it's just their statement. And if there are no other questions. Okay, hearing none, Mr. Litchfield, thanks. Thank you. Okay, Mr. Roberts, we'll give you that minute, I promise. I have a threshold question for you. You said that AB came up in the in the motion to alter or amend the judgment, right? I believe so, but if I'm mistaken. I don't see a reference to A or B anywhere. Well, here's the problem, your honor. A and B weren't litigated. They weren't fairly raised by the motion to dismiss. And Judge Gettleman says A and B claims have been brought in the order on appeal. It's in the early paragraphs of Judge Gettleman's order. And of course A and B are pledged. What we were talking about before, and this is what's frustrating, is that if the district courts are swamped, busy, especially in this building, and if they overlook something, file a motion to say, Judge, hold on, we have A and B in here. And I thought, well maybe I missed it or something. But I don't see a reference to A or B anywhere in it here. So I don't know, how can we fault a district court judge for not recognizing that A and B were in the case when the plaintiff never raised it? Well, the judge did realize A and B were in the case. He recites it. But what? No, in the case, we would ask that you reverse and remand for a reinstatement of the A and B claims and the 1962... Wouldn't the district court judge say, this is the first I'm hearing about it. Why wasn't there an A and B point made in the Rule 59 or Rule 60 motion? Because there was no A and B point made in the motion to dismiss. They were all about corporate distinctiveness, other than the causation, which we've answered. Well, then when it, all right. And in which case, you know, if the judge was just dismissing A and B based on causation, his footnote about causation, this court should then find that that was an erroneous basis that was faulted. But you never said, this is an interlocutory appeal, improper interlocutory appeal. We're going forward on A and B in the district court. We're not going to the Seventh Circuit for anything. That never happened. We should be doing discovery on A and B. We'd love to do discovery, but there's no discovery permitted in the case yet. All right. Anything, you want to close with a final comment? No, Your Honor, but just thank you, and we would ask that you reverse the remand. Okay. You're quite welcome. Mr. Roberts, thanks to you. Mr. Litchfield, thanks to you and your colleague. We'll take the appeal under advisement.